UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

A. TSIRAMBIDIS;

Plaintiff;

Vs.

**JURY TRIAL DEMANDED**

00cv654 or122A

OFFICER SHIELA L. GRIFFIN; and

FOUR UNNAMED POLICE OFFICERS; and,

CITY OF TAMPA

Defendants

**$250,000 IN DAMAGES**

INITIAL COMPLAINT
[JURY TRIAL DEMANDED]
[DAMAGES IN EXCESS OF $250,000]

As an initial matter the PLIANTIFF DEMANDS A JURY TRIAL and seeks COMPENSATORY DAMAGES OF $250,000 and PUNITIVE DAMAGES OF $25,000,000.

05/17/00                                    1

# PARTIES

PRO SE PLAINTIFF is an orthotic medical specialist residing in within the Middle District of Florida; Seminole County. The Plaintiff maintains a business address at 4861 N. Goldenrod Road, Orlando, Florida 32793.

DEFENDANTS are hereby sued individually and in their respective official capacities for the gross violations of the Plaintiff's civil rights, and for battery, use of excessive force, etc.

OFFICER SHIELA L. GRIFFIN is a known police officer that is a named defendant; at least four other police officers participated in these gross violations of civil rights and battery – however, their names are unknown at this time.

CITY OF TAMPA is hereby named as a defendant as the employer of Officer Griffin and the four unnamed police officers. It is believed that Officer Griffin and the four unnamed police officers were acting out their employer's wishes and that the City of Tampa openly encouraged these police officers to violate that Plaintiff's civil rights.

Furthermore, the Plaintiff believes that the City of Tampa maintains an official policy to violate the civil rights of members of the public; like the Plaintiff.

# FEDERAL JURISDICTION GRANTED
# BY 42 U.S.C. 1983 and 1985

Plaintiff hereby invokes jurisdiction of **42 U.S.C. 1983 and 1985.**

### A. 42 U.S.C. 1983 and 1985 hereby invoked by Plaintiff

The federal courts have held or recognized, without any further discussion of the standards to be used to determine reasonableness, that a police officer can be found liable for damages under 42 U.S.C.A. § 1983 for the use of unreasonable force in effecting an arrest. 42 U.S.C. 1985[1] is also invoked by Plaintiff for allegations of conspriacy.

### B. FOURTH AMENDMENT VIOLATIONS hereby cited by Plaintiff

All Plaintiff's claims brought herein under 42 U.S.C.A. § 1983 in which it is alleged that law enforcement officers used excessive force--deadly or not--in the course of an arrest is properly analyzed under the "objective reasonableness" standard of the Federal Constitution's Fourth Amendment, rather than under the more generalized standard of "substantive due process" pursuant to the due process clause of the Fourteenth Amendment, because the Fourth Amendment provides an explicit textual source of

---

[1] The Civil Rights Act of 1871 was intended by Congress to foster participation in democratic society by shielding citizens from violence and intimidation. Section 2 of the Act, codified as 42 U.S.C. 1985(3), was passed as a response to widespread acts of terror, committed with impunity, aimed at creating an environment hostile to equality in the democratic and judicial process. While some members narrowly defined denial of fundamental rights of citizenship, at most, 1985(3) was designed to protect those rights safeguarding participation in a free and democratic society.

federal constitutional protection against such physically intrusive governmental conduct. Graham v Connor (1989, US) 104 L Ed 2d 443, 109 S Ct 1865.

Section 1983 claims against law enforcement officers for excessive force have to be analyzed under the Fourth Amendment, rather than Fourteenth Amendment. U.S.C.A. Const. Amends. 4, 14; 42 U.S.C.A. § 1983. Trautman v. Lagalski, 28 F. Supp. 2d 327 (W.D. Pa. 1998). Because excessiveness of **force affects reasonableness of seizure** under Fourth Amendment, trial court in action under 42 U.S.C.A. § 1983 by arrestee for use of excessive force by officers in making arrest erroneously dismissed action for failure to state claim for relief, where dismissal was based on theory that arrest and force must have been intended to deprive arrestee of specific constitutional right to be actionable under § 1983. Kidd v O'Neil (1985, CA4 Va) 774 F2d 1252.

## General Allegations:

That OFFICER GRIFFEN and FOUR UNNAMED POLICE OFFICERS violated clearly established Constitutional law, case precedent and Florida law. That all OFFICERS knew that they were violating said laws and acted in bad faith against the Plaintiff. Officers violated Plaintiff's FOURTH AMENDMENT rights as well as Florida Statue 776.05(1)[2] as described herein.

These unfortunate events described below occurred on Saturday, May 6th, 2000 when Officer Griffin and Four Unnamed Officers arrested the Plaintiff while he peaceably observed a protest rally from the sidewalk adjacent to the U.S. Federal Courthouse in Tampa, Florida.

Two days earlier the Plaintiff had arrived for instructional and educational seminars in the construction of orthotic footwear in Tampa. During a break from the conference the Plaintiff decided "to see the sights" of the local community; a decision that led to the regrettable events described herein.

While "seeing the sites" of downtown Tampa on Saturday, May 6th, the Plaintiff happened upon a protest rally. Plaintiff then observed from the sidewalk of the U.S. Federal Courthouse persons in the crowd yelling at and pointing fingers at two middle

---

[2] A law enforcement officer, or any person whom the officer has summoned or directed to assist him or her, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. The officer is justified in the use of any force: (1) Which he or she reasonably believes to be necessary to defend himself or herself or another from bodily harm while making the arrest;

05/17/00	5

aged individuals wearing garb similar to that of "Grateful Dead" rock and roll band fans; i.e. tie die T-shirts, blue jeans with holes, unkept hair, etc. It appeared that members of the crowd were yelling "NARCS!" while pointing to the two "Grateful Dead" individuals. It appeared that the two "Grateful Dead" individuals were actually undercover police officers that had attempted to infiltrate the crowd; but, were discovered by the crowd as police agents.

Suddenly other officers began making arrests directly in front of the Plaintiff. Then members of the crowd behind the Plaintiff began yelling obsentities at the officers in front of the Plaintiff. "PIGS", "PIGS" and other insults were screamed at the officers from behind the Plaintiff.

An unnamed police officer, with his back to the Plaintiff, yelled at the Plaintiff "BACK OFF". Recalling a television special on the life of Malcolm X and that the Supreme Court had ruled in the late 1960's that 8-10 feet was a safe observable distance in which a civilian could view police activity the Plaintiff responded "I don't have to". Again, the unnamed police officer yelled "BACK OFF", and the Plaintiff responded "I don't have to".

Suddenly and unexpectedly, an unnamed police officer grabbed the Plaintiff's arm and pushed him to a squad car. Quickly, another police officer rushed towards the Plaintiff. Immediately the police officers began to man handle the Plaintiff, and commit various forms of battery against the Plaintiff.

Soon another three to four officers joined in the melee which included officers "kneeing" the Plaintiff, kicking him, pushing him to the crowd, bruising him, cutting him, punching him, and causing a blow to the end.

From this instant forward the police officers never requested the Plaintiff's cooperation in an investigation or arrest. These unnamed officers – including Officer Griffin – never advised the Plaintiff of his constitutional rights [Miranda Warning].

The Plaintiff was then taken into custody and incarcerated in a jail maintained by the City of Tampa.

## Allegations of:
## Excessive force; brutality; extreme conduct.

The Plaintiff was unlawfully beaten by OFFICER GRIFFEN and FOUR UNNAMED POLICE OFFICERS of the City of Tampa Police Department[3].

That OFFICER GRIFFEN and FOUR UNNAMED POLICE OFFICERS used excessive force to arrest the Plaintiff[4]. That the manner in which hand cuffs were applied was designed to significantly injure the Plaintiff[5]

That OFFICER GRIFFEN and FOUR UNNAMED POLICE OFFICERS committed a battery against the Plaintiff acted in bad faith when using excessive force[6] and said OFFICERS were never in fear of their safety or health[7].

---

[3] A Civil rights complaint stated cause of action under § 1983 for alleged beating during lawful arrest of plaintiff, where complaint alleged unprovoked beating with shotgun and failure of other officers present to intervene and prevent or stop beating. Negron Rivera v Diaz (1988, DC Puerto Rico) 679 F Supp 161.

[4] While concluding that the plaintiff's constitutional rights were not violated when he was shot and injured during his arrest, the court in Dolan v Golla (1979, MD Pa) 481 F Supp 475, affd without op (CA3 Pa) 633 F2d 209, held that a police officer may not use force which far exceeds that which is reasonable and necessary under the circumstances to make an arrest and that the use of such force imposes liability under 42 U.S.C.A. § 1983.

[5] See Redo v. Sylvestri, 690 So.2d 731 (Fla. 4th DCA 1997). Arresting a person without even arguable probable cause, handcuffing him in a manner that injures him after being made aware of his physical condition, and pulling him out of a police car and beating him, constitute a civil rights violation.

[6] In City of Miami v. Sanders, 672 So.2d 46, 47 (Fla. 3d DCA 1996), this Court held that "the sole basis and limit of an arresting officer's liability in making a lawful arrest is found on a claim of battery, in that excessive force was involved in making the arrest.

That the aforementioned defendants conducted an unlawful arrest, as the Plaintiff was not interfering in any police business. That the arresting charge of "interfering with an officer" is a sham charge and has not legal basis. This sham charge was created to effect an unlawful arrest.

The Plaintiff alleges that the aforementioned officer defendants deliberately, with malice and fore thought, damaged the wrist and hand of the Plaintiff[8], and that these officers

---

[7] Police officer is liable under 42 U.S.C.A. § 1983 for arrest involving excessive use of force without good faith belief that force was reasonably necessary to protect officer's safety, and complaint so stating would not be dismissed for failure to state cause of action. Di Giovanni v Philadelphia (1982, ED Pa) 531 F Supp 141.

[8] On the issue of the amount of force used, Bolanos v. Bain, 696 So.2d 478 (Fla. 3d DCA 1997), does not preclude a court in any given case from finding that the manner in which a suspect is handcuffed may, in combination with other facts, constitute excessive force or that handcuffing a suspect arrested without even arguable probable cause may constitute unreasonable, actionable conduct. Similarly, Hannula v. City of Lakewood, 907 F.2d 129 (10th Cir.1990) (adoption recognized by Dixon v. Richer, 922 F.2d 1456 (10th Cir.1991)), is distinguishable. There, the court held that the failure to loosen tight handcuffs did not rise to the level of a clearly established constitutional violation. However, in that case, the claimant presented no evidence of contusions, lacerations or damage to the bones and nerves of the wrists, did not prove that the amount of force used was substantial, and did not establish malice on the part of the officer. See id. at 132.

have a history of using excessive force[9]. It is believed that the defendant officer's behavior conformed to the official policy of the City of Tampa Police Department[10]

## Allegations of:
## Conspiracy to Violate Civil Rights

Based upon reason and belief, that Plaintiff alleges that the aforementioned defendants had conspired, prior to May 6th, 2000, to violate the civil rights of protest marchers.

Plaintiff asserts that 42 U.S.C. 1985 provides a cause of action to the Plaintiff against the aforementioned officers. Plaintiff alleges that these defendant officers[11], at least two or more, pre-planned with malice and forethought a scheme to send "undercover" police officers into the crowd. That when these "undercover" police officers would "signal",

---

[9] Where there is an issue of whether or not excessive force was used by a police officer, prior investigations into the officer's use of excessive force in other cases are relevant. Id. See also Mendez v. State, 412 So.2d 965 (Fla. 2d DCA 1982)(exclusion of evidence of police officer's prior suspension for use of excessive force was reversible error where such evidence would have provided jury with plausible motive for police officer's misrepresentation of true facts surrounding shooting incident).

[10] "Bare allegation" that the employee's conduct conformed to official policy, custom or practice enough to survive motion to dismiss. Leatherman, 507 U.S., 122 L. Ed. 2d at 522, 113 S. Ct.

[11]
"By contrast, § 1985(2) requires simply that "two or more persons" conspire and there is no indication to the contrary in the legislative history. Moreover, the roots of § **1985** lie in the Civil Rights Act of 1871, the Ku Klux Klan Act, and we doubt Congress intended for the Klan to be able to escape liability by incorporating.

Because plaintiff has adequately alleged a conspiracy under § **1985(2)**, the judgment of the district court is reversed as to the § 1985 claim.²"

05/17/00                                                                 10

regular uniformed officers would make unnecessary and unlawful arrests of members of the crowd. Plaintiff has reason to believe that these defendant officers pre-planned this conspiracy for the sole intent of denying the civil rights of individuals involved in the protest rally on the day of May 6th, 2000.

Furthermore, the Plaintiff has reason to believe that many of the aforementioned officer defendants have long histories of using excessive force[12] and making unnecessary and unlawful arrests.

## Allegations of Battery
## And Violations of F.S. Sec. 776.05

Plaintiff asserts a battery claim for excessive force against Officer Griffin and the Four unnamed officers in effecting the unlawful arrest. F.S.A. § 776.05(1)[13].

---

MCANDREW v LOCKHEED MARTIN, U.S.C.A. for 11th Cir., No. 97-8483
[12] Mendez v. State, 412 So.2d 965 (Fla. 2d DCA 1982). As the supreme court has summarized the case, Mendez reversed a conviction of attempted second-degree murder of a policeman where the officer victim/witness had been the subject of numerous internal investigations, and had been suspended, for beating a suspect, for stealing a gun from another officer, and for pulling a revolver on a student who committed a traffic infraction. The district court correctly concluded that the officer's prior use of excessive force was relevant to his bias and motive for testifying and that the jury should have been made aware of his past conduct. Breedlove v. State, 580 So.2d 605, 608 (Fla.1991).
[13] A law enforcement officer, or any person whom the officer has summoned or directed to assist him or her, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. The officer is justified in the use of any force: (1) Which he or she reasonably believes to be necessary to defend himself or herself or another from bodily harm while making the arrest;

Plaintiff was unlawfully beaten by OFFICER GRIFFEN and FOUR UNNAMED POLICE OFFICERS[14].

The amount of excessive force used by Officer Griffen and the four unnamed officers was completely unreasonable[15].

Plaintiff alleges that these unnamed officers and Officer Griffen could not "reasonably believes [the force] to be necessary to defend themselves or another from bodily harm while making the arrest," § 776.05(1), Fla.Stat. (1995), as the Plaintiff made no offensive comments, gestures, signals or signs of offensive conduct.

---

[14] Where the facts upon which the determination of qualified immunity hinges are in dispute, then those facts require a determination by a finder of fact. Brescher v. Pirez, 22 Fla. L. Weekly D210, --- So.2d ---- [1997 WL 11857] (Fla. 4th DCA Jan. 15, 1997). Beating a restrained suspect who is not resisting is obviously unlawful and violative of a suspect's constitutional rights. E.g., Butler v. City of Norman, 992 F.2d 1053 (10th Cir.1993)(fact issues precluded officers' summary judgment on ground of qualified immunity where plaintiff's deposition stated that officers beat him with flashlight when his hands were handcuffed behind his back).

[15] A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances. Dixon v. State, 101 Fla. 840, 132 So. 684 (1931); City of Miami v. Albro, 120 So.2d 23 (Fla.3d DCA 1960); Hutchinson v. Lott, 110 So.2d 442 (Fla. 1st DCA), cert. denied, 115 So.2d 415 (Fla.1959).

## Affirmative Defenses
## Regarding
## Qualified immunity

If the plaintiff proves his allegations, then the officers are not entitled to the defense of qualified immunity, since their conduct violated clearly established constitutional law. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); City of Hialeah v. Fernandez, 661 So.2d 335, 339 (Fla. 3d DCA 1995).

Doctrine of qualified immunity provides that government officials generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Unfortunately in this instant case the laws are clear; to include AMENDMENT IV of the U.S. Constitution, general tort law in Florida, and § 776.05(1), Fla.Stat. (1995).

If the plaintiff proves his allegations, then the officers are not entitled to the defense of qualified immunity, since their conduct violated clearly established constitutional law. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); City of Hialeah v. Fernandez, 661 So.2d 335, 339 (Fla. 3d DCA 1995).

## DAMAGES

The Plaintiff has suffered severe financial hardship as a result of the unlawful arrest of May 6th, 2000. Plaintiff's business as an orthotic craftsman has been severely curtailed

because of the constant pain in the Plaintiff's wrists. Plaintiff's ability to make specialized medically prescribed shoes is almost non-existent. The Plaintiff has been in this business for nearly 15 years and recently attended special schooling in New York State to craft such articles. The malicious and unlawful arrest of the aforementioned officers, the battery inflicted upon the Plaintiff by these defendant officers, and the ancillary beatings have emotionally, psychologically and financially harmed the Plaintiff.

Plaintiff seeks **$250,000 in compensatory damages** against all the defendants, including the City of Tampa, Officer Griffen and the four unnamed officers.

To send a clear message to the defendant officers and the City of Tampa, the Plaintiff seeks **punitive damages of $25,000,000** to prevent the City of Tampa and it's Police Department from inflicting such gross and reprehensible batteries and violations of U.S. Constitutional rights against other citizens.

## JURY TRIAL DEMANDED

Plaintiff seeks a trial by jury of his peers.

Respectfully submitted:

*/s/ Alex Tsirambidis*

Alex Tsirambidis

C/o 7523 Aloma Avenue

Winter Park, Florida 32792

407-671-6944